UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

—————————————————————
                                    :
MICHAEL COSTA,                      :
                                    :      Civil Action No.
              Plaintiff,            :      12-cv-3424
                                    :
                                    :
        v.                          :
                                    :
VERIZON NEW JERSEY, INC.,           :      **OPINION**
                                    :
                                    :
              Defendant.            :
—————————————————————:

**APPEARANCES**:
COLLEEN M. READY, ESQUIRE
LISA A. GREEN, ESQUIRE
MARGOLIS EDELSTEIN
100 CENTURY PARKWAY
SUITE 200
MOUNT LAUREL, NEW JERSEY 08054
     *Attorneys for Plaintiff,*

MARY B. ROGERS, ESQUIRE
JEFFREY ADAM GRUEN
DAY PITNEY LLP
ONE JEFFERSON ROAD
PARSIPPANY, NEW JERSEY 07054
     *Attorneys for Defendant.*

**HILLMAN, District Judge**.

     Presently before the Court is Plaintiff Michael Costa's
Motion to Remand this matter to New Jersey state court.  For the
reasons that follow, the Motion will be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

     Plaintiff Michael Costa is a New Jersey resident and former
employee of Defendant Verizon of New Jersey, Inc. ("Verizon").
Prior to his discharge in 2009, Costa had been a Verizon employee

for over twenty years.  (Compl. ¶ 5.)  During his term of
employment, Costa allegedly became aware that a co-worker was
performing his job duties while under the influence of drugs and
alcohol.  (Id. ¶ 6.)  Costa allegedly further determined that the
co-worker was improperly accessing personal information on
customers' computers during his employment.  (Id.)  Costa
believed his co-worker was unsuitable for his job and was
endangering the safety of Verizon customers, and therefore
reported him to his supervisor.  (Id. ¶ 6, 7.)  Costa was
subsequently terminated from employment at Verizon.  (Id. ¶ 7.)
Costa presently contends that he was wrongfully discharged in
retaliation for reporting his co-worker's conduct.  (Id. ¶ 5.)
Defendant Verizon, however, maintains that it terminated Costa
because he made racial slurs at the workplace and had numerous
prior instances of misconduct.

Plaintiff filed a complaint in New Jersey state court on
June 28, 2010, alleging violations of the New Jersey
Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1,
et. seq.  On February 7, 2012, Plaintiff filed a First Amended
Complaint in state court, in which he added claims for breach of
contract, wrongful discharge, and breach of the covenant of good
faith and fair dealing, which he based on Verizon's Code of
Conduct employee manual.  On May 16, 2012, Plaintiff once again
amended his complaint.  In his Second Amended Complaint, Costa

supplemented his claims by basing them on both the Code of
Conduct and the collective bargaining agreement between Verizon
and his union.  Defendant removed the case to federal court on
June 6, 2012 alleging that the Court has federal question subject
matter jurisdiction over disputes related to collective
bargaining agreements because they are preempted by Section 301
of the federal Labor Management Relations Act ("LMRA").
Plaintiff thereafter filed the instant Motion to Remand this
matter back to New Jersey state court on July 3, 2012.
Defendants responded in opposition on July 23, 2012.  Plaintiff
subsequently filed a Third Amended Complaint on November 21,
2012.  In his Third Amended Complaint, Costa removed all
references to the collective bargaining agreement, and once again
solely bases his claims on the Verizon Code of Conduct, thereby
attempting to eliminate the federal question from suit.[1]

---

[1]  The Court notes that Plaintiff inappropriately amended
this complaint because he did not seek and receive leave of court
prior to doing so.  Rule 15(a) of the Federal Rules of Civil
Procedure provides that: "[a] party may amend its pleading once
as a matter of course within: 21 days after serving it, or if the
pleading is one to which a responsive pleading is required, 21
days after service of a responsive pleading or 21 days after
service of a motion under Rule 12(b), (e), or (f), whichever is
earlier."  Fed. R. Civ. P. 15(a).  Here, Costa's filing was well
outside the 21-day deadline, and therefore he was required to
seek leave of court prior to filing his Third Amended Complaint.
However, it is well established that leave to amend "shall be
freely given when justice so requires."  Beale v. Dep't of
Justice, No.Civ.A.06-2186, 2007 WL 327465, at *3 (D.N.J. Jan. 30,
2007) (Simandle, J.)  The record here indicates that Costa
informed Defendant during the 21-day time period that he believed
removal was improper because he intended to amend his complaint

## II.  LEGAL STANDARD

The removability of a legal matter is determined from the plaintiff's pleadings at the time of removal.  See Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 14 (1951).  It is well established that a defendant may remove a civil action filed in state court to federal court if the latter would have had original jurisdiction to hear the matter in the first instance.  28 U.S.C. § 1441(b); Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1991).  The removing defendant bears the burden of establishing jurisdiction and compliance with all pertinent procedural requirements.  Id.  Once the case has been removed, however, the court may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking.  28 U.S.C. § 1447(c).  Furthermore, any doubts should be resolved in favor of remand.  Boyer, 913 F.2d at 111.

## III. DISCUSSION

Plaintiff avers that this Court lacks subject matter jurisdiction over the instant dispute, and that this matter should therefore be remanded back to state court.  In the

---

to remove his federal claims.  (See Pl.'s Mot. Remand, Ex. B, 06/07/12 Letter from Pl. to Def.)  Defendant anticipated Plaintiff filing his amended pleading with these claims removed, and therefore briefed its Response in Opposition accordingly.  As such, while Plaintiff's amended pleading was improperly filed, the Court will accept Costa's Third Amended Complaint because it finds that justice and judicial economy so requires.

alternative, Plaintiff also argues that Defendant's removal was untimely.  Defendant, on the other hand, asserts that, despite his stated intentions to withdraw his specific references to the collective bargaining agreement (as later manifested in the Third Amended Complaint), Costa's claims are nonetheless "substantially dependent on" and "inextricably intertwined with" the terms of the agreement, and this Court therefore retains jurisdiction.[2] (Def.'s Resp. Opp'n at 9.)  Defendant also asserts that its removal of this case to federal court was timely because it did not have a good faith basis to remove prior to the filing of Plaintiff's Second Amended Complaint on May 16, 2012.

### A.   Complete Preemption

Under the doctrine of complete preemption, the preemptive force of a federal law may "displace entirely any state cause of action."  <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Ca.</u>, 463 U.S. 1, 23 (1983).  As explained by the Supreme Court of the United States, the doctrine operates to "convert[] an ordinary state common-law complaint into one stating a federal claim[.]"  <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987).

One such instance of complete preemption occurs in the

---

[2]  At the time that Defendant submitted its Response in Opposition to Plaintiff's Motion to Remand, Plaintiff had not yet filed his Third Amended Complaint removing his direct references to the collective bargaining agreement.

context of § 301(a) of the LMRA, which states in relevant part as follows:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any District Court of the United States having jurisdiction over the parties.

29 U.S.C. § 185(a).  In enacting § 301 of the LMRA, Congress vested jurisdiction in the federal courts over suits for contract disputes between employers and labor unions representing certain industries.  See Textile Workers v. Lincoln Mills, 353 U.S. 448, 456 (1957).  In Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962), the Supreme Court concluded that § 301 of the LMRA completely preempts any state-law cause of action for a violation of a collective bargaining agreement.  Id. at 103.  Subsequently, in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), the Court further extended the reach of federal preemption in this area, finding that the preemptive force of § 301 applied to tort, as well as contract, suits implicating "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement."  Id. at 211.  Indeed, the Supreme Court has recognized that:

> [T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization."  Any such suit is purely a creature of federal law, notwithstanding the fact that state law

6

would provide a cause of action in the absence of § 301.

Franchise Tax Bd., 463 U.S. at 23.  In Lueck, however, the Supreme Court also made clear that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted . . . [because] it would be inconsistent with congressional intent . . . to preempt state rules that . . . establish rights and obligations independent of a labor contract."  Id.  As such, a state law claim will be found to be preempted by § 301 if the claim is: (1) founded directly on rights created by a collective-bargaining agreement, or (2) substantially dependent upon an analysis of a collective bargaining agreement.  Shanefelter v. U.S. Steel Corp., 784 F.Supp.2d 550, 558 (W.D. Pa. 2011) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987)).

In the instant case, Plaintiff argues that, since he has removed references to the collective bargaining agreement in his pleadings, the federal question has likewise been removed from suit.  Defendant, on the other hand, asserts that, despite the fact that Plaintiff no longer expressly refers to the collective bargaining agreement, this matter is nonetheless federally preempted because the resolution of Costa's claims is substantially dependent upon and inextricably intertwined with an analysis of the larger collective bargaining agreement.

We are not the first to confront this issue, as both our

Court of Appeals and district courts within its appellate
jurisdiction have previously addressed the intersection of
federal and state law in employment contract disputes.  See
Johnson v. NBC Universal, Inc., 409 F. App'x 529 (3d Cir. 2010);
Fischer v. G4S Secure Solutions U.S.A., Inc., No.Civ.A.10-6792,
2011 WL 3859742 (D.N.J. Aug. 31, 2011) (Simandle, J.); Cole v.
Pathmark of Fairlawn, 672 F.Supp. 796 (D.N.J. 1987); Henderson v.
Merck & Co., Inc., 998 F.Supp. 532, 536-540 (E.D. Pa. 1998).  In
Fischer, the plaintiff brought suit against his former employer
and his union in state court.  Id. at *1.  The employer removed
the case to federal court on the basis that the union's presence
in the suit mandated preemption.  Id. at *2.  The union was
subsequently dropped as a party and all claims pertaining to it
were dismissed.  Id.  Accordingly, the only claim remaining
against the employer was for an alleged breach of contract for
failure to abide by promises in the employee manual[3] — a contract
the plaintiff argued was separate and apart from his collective
bargaining agreement with the union.  Id.  More specifically, in
the employee manual, the defendant covenanted to treat employees
fairly and confidentially.  Id. at *3.  The collective bargaining

---

[3] Following termination of the union as a party, the
plaintiff also retained a claim against his former employer for
unlawful retaliation.  Id. at *1.  The Fischer Court dismissed
the retaliation claim, however, on the grounds that the pleadings
related to this count were scant and the plaintiff failed to
state a claim upon which relief could be granted.  Id. at *4-5.

agreement, on the other hand, contained a provision stating the following:

> This Agreement shall not be construed to infringe upon or impair any of the normal management rights of the Employer, which are not inconsistent with the provisions of this Agreement. Included among management rights is the authority to administer and/or manage the Employer's business, including but not limited to ... the right to hire, promote, demote, transfer, discipline, suspend or discharge employees for just cause.

Id. at *2.

The Fischer Court began its analysis by noting that, under New Jersey law, an employee manual can create a contractual obligation independent of the collective bargaining agreement, but that preemption of the claim turns on "whether this independent contract claim is dependent upon and requires interpretation of the collective bargaining agreement." Id. at *3 (citing Woolley v. Hoffman LaRoche, Inc., 99 N.J. 284, 297, 307 (1985)). In examining the plaintiff's contract claim, the court found that the collective bargaining agreement's broad language indicated that independent contracts were subject to modification, and the employee manual therefore had to be viewed alongside the collective bargaining agreement. Fischer, 2011 WL 3859742 at *4. More specifically, the court "would have to determine, among other things, whether the employee manual modified the provision of the collective bargaining agreement stating that the employer retained 'the right to hire, promote, demote, transfer, discipline, suspend or discharge employees for

just cause[.]'" Id. (citing relevant provisions of collective bargaining agreement at issue). Accordingly, the court found that the plaintiff's employment manual contract claim was preempted by the LMRA. Id.

Similarly, in Johnson v. NBC Universal, Inc., 409 F. App'x 529 (3d Cir. 2010), our Court of Appeals addressed the issue of federal preemption with respect to an employment contract dispute. The employee in Johnson was a member of a union that entered into a collective bargaining agreement with the television network, NBC. Id. at 530. The collective bargaining agreement authorized the union to negotiate with employers on behalf of its members, arrangements which incorporated NBC's internal Policy Against Harassment. Id. During his course of employment at NBC, Johnson came to believe that he was being harassed by his supervisor, and therefore filed suit in New Jersey state court alleging NBC breached its Policy Against Harassment. Id. NBC removed the case to federal court on the grounds that it was preempted by § 301 of the LMRA. Id. Johnson, however, sought to remand the matter to state court on the basis that NBC's Policy Against Harassment was a stand-alone contract separate and apart from the collective bargaining agreement. Id. In rendering its decision, the Third Circuit relied on specific language in both the specific contract and collective bargaining agreement, which, when read jointly,

indicated that the Policy Against Harassment could not be interpreted independently.  Id. at 531.  More specifically, the contract (called a "deal memo") contained the following phrase: "This deal memo and any applicable collective bargaining agreement ("CBA") shall constitute our full understanding and shall supersede any oral or written terms not specifically set forth on [*sic*] this memo or in its attachments."  Id.  The collective bargaining agreement, on the other hand, provided that the union and employer were to "resolve all complaints, disputes or questions as to the interpretation, application or performance of the CBA using procedures set forth in the CBA."  Id. at 532 (internal quotations & alteration of text omitted).  Based on this language, the Third Circuit held that Johnson's contract claim was preempted by the LMRA because "the [collective bargaining agreement], Deal Memos, and the Policy [Against Harassment] all must be interpreted [together] to determine whether the complaint procedures are mutually exclusive and, if so, which complaint procedure controls."  Id. at 531.

Here, Defendant maintains that it lawfully terminated Costa because he made racial slurs and failed to adhere to Section 1.2 of the Verizon Code of Conduct, which provides that:

> Verizon has a policy of zero tolerance for discrimination, sexual harassment or other unlawful harassment based on age, race, color, national origin, religion, gender, sexual orientation, disability or any other legally protected category under federal, state or local law.  Harassment includes but is not limited to,

> racist, sexist or ethnic comments, jokes, gestures, or
> any action or statement creating an intimidating,
> hostile, or offensive work environment.

(Def.'s Notice of Removal at pg. 27 of 250; Verizon Code of
Conduct § 1.2 ("Verizon Code of Conduct").)   Costa's collective
bargaining agreement between his union and Verizon highlights
this "zero tolerance policy for discrimination":

> In a desire to restate their respective policies, neither
> [Verizon] nor the Union shall unlawfully discriminate
> against any employee because of such employee's race,
> color, religion, gender, age or national origin or
> because the employee is handicapped, a disabled veteran
> or a veteran of the Vietnam era.

(Defs.' Notice of Removal at pg. 28 of 247; Collective Bargaining
Agreement ("CBA"), Art. XIV, § 1.)   By its own terms, the
collective bargaining agreement seeks to "restate" — and thereby
incorporate — Verizon's anti-discrimination policy provided in
its Code of Conduct.   Accordingly, the terms of the collective
bargaining agreement and the Code of Conduct are not independent
of one another, but instead together comprise the entirety of
Verizon's policy against discrimination.

Moreover, although neither party raises this point, it is
questionable whether the Code of Conduct could even be considered
to be a valid contract, let alone one that is separate and apart
from the collective bargaining agreement.[4]   Despite the fact that

---

[4]   Indeed, another court in the District of New Jersey
recently interpreted the precise terms of Verizon's Code of

neither Costa nor Verizon has attached the full text of the Code

of Conduct to any filings made here in federal court, the record

reflects that Verizon filed a brief before the state court in

which it directly cited to the following relevant language in the

Code of Conduct:

> This Code of Conduct is not an employment contract.
> Adherence to the standards of the Code of Conduct is a
> condition of continued employment.  This Code does not
> give you rights of any kind, and may be changed by the
> company at any time without notice.  Unless governed by
> a collective bargaining agreement, employment with
> Verizon is "at will," which means that you or Verizon may
> terminate your employment for any reason or no reason,
> with or without notice, at any time.

(Def.'s Resp. Opp'n, Ex. D, 02/03/12 Br. Opp'n to Pl.'s Mot.

Amend. Compl. at 12-13 (citing text of Verizon Code of Conduct))

(emphasis added).  By its own terms, the Code directly provides

that, if an employee is a member of a union, the collective

bargaining agreement supersedes any independent contractual

obligations between Verizon and that employee.  The Code's text

explicitly states that employment at Verizon is not proscribed by

its terms, but rather is solely "governed by [the] collective

---

Conduct at issue here in a factually similar employment
discrimination suit, and found that the Code did not constitute a
valid and independent contract.  See Polonsky v. Verizon Commc'ns
Corp., No.Civ.A.09-4756, 2011 WL 5869585, at *9 (D.N.J. Nov. 22,
2011) (Wolfson, J.)  Further, other New Jersey courts have
likewise recognized that employer policy manuals and codes of
conduct do not constitute valid contracts.  See Tripodi v.
Johnson & Johnson, 877 F.Supp. 233, 238 (D.N.J. 1995); Maietta v.
United Parcel Serv., Inc., 749 F.Supp. 1344, 1361 (D.N.J. 1990);
Kane v. Milikowsky, 224 N.J. Super. 613, 541 (App. Div. 1988).

bargaining agreement."   (Id.)   The above language further provides that the Code "is not an employment contract," that employees have no rights under its terms, and that employees may be terminated for any reason unless they are a party to a collective bargaining agreement.  As such, the language of the Code of Conduct itself further supports a finding that it cannot be interpreted independently of the collective bargaining agreement.

In addition to the language of the Code of Conduct, the text of Costa's collective bargaining agreement also indicates that it preempts any individual employment contract that may exist. Specifically, the collective bargaining agreement details the grievance procedure that union members must follow when challenging their discharge[5] on the grounds that they were terminated "without just cause." (CBA, Art. VI, § 1; Art. XI.)[6] Notably, the grievance procedure provides that: "[N]othing in this Article shall in any manner affect the right of any individual employee . . . to present grievances directly to

_____

[5]  "Discharge" is defined in the collective bargaining agreement as: "any involuntary separation of an employee from the service of the Company other than by layoff[.]" (CBA, Art. VI, § 2.)

[6]  The record in this case in fact indicates that Plaintiff took advantage of this procedure by filing a claim for wrongful discharge with his union.  The claim went to arbitration in May of 2011, and the arbitrator upheld Costa's discharge as termination for just cause.  (See Defs.' Resp. Opp'n, Ex. H, Arbitration Op.)

14

[Verizon] and to have them adjusted, provided such agreement is not inconsistent with this Agreement or with any applicable law." (Id. § 5.) (emphasis added).  This contractual language is similar to the phrase relied on by the Fischer Court when it found that the collective bargaining agreement preempted the individual contract.  Moreover, akin to the language of the collective bargaining agreement cited by the Third Circuit in Johnson, Costa's agreement likewise provided that: "Neither [Verizon] nor the Union will attempt by means other than the grievance procedure to bring about the settlement of any issue which is properly a subject for disposition through the grievance procedure." (Id. § 8.)

Therefore, in order to successfully adjudicate Costa's claims, joint consideration of the terms of the Code of Conduct and collective bargaining agreement will be necessary.  With respect to Costa's breach of contract and breach of covenant claims, the protections against discrimination afforded by the Code of Conduct do not arise independently under New Jersey law, but rather are subsumed within the rights provided by the collective bargaining agreement.  As to the wrongful discharge claim, Costa's termination will need to be viewed through the lense of the collective bargaining agreement.  Specifically, it will need to be determined whether his alleged use of racial slurs and employee misconduct constituted "just cause" for

Verizon's termination of his employment, whether Verizon utilized the proper procedure in discharging him, and whether he completed the appropriate steps of the grievance procedure prior to filing this lawsuit.

Based on the above, Costa's revised claims solely premised on the Verizon Code of Conduct are not separate and apart from an analysis of the terms of his collective bargaining agreement, but rather appear to be mutually dependent upon and intertwined with one another. Thus, despite Costa's efforts to eliminate the federal question from suit by removing all references to the collective bargaining agreement in his Third Amended Complaint, the Court finds that his contract and tort claims are nonetheless preempted by § 301 of the LMRA. Accordingly, federal law applies to Costa's contract and tort claims.[7]

---

[7] This District has previously recognized that Section 301 of the LMRA does not preempt CEPA claims. See Reynolds v. TCM Sweeping, Inc., 340 F.Supp.2d 541, 542 (D.N.J. 2004) (Irenas, J.); Patterson v. Exxon Mobil Corp., 262 F.Supp.2d 453, 463 (D.N.J. 2003) (Simandle, J.); Carluccio v. Parsons Inspection & Maint. Corp., No.Civ.A.06-4354, 2007 WL 1231758, at *5 (D.N.J. Apr. 24, 2007). Accordingly, Costa's CEPA claim in Count I is not federally preempted in the instant matter.

If Plaintiff's contract and tort claims were the only claims in this case, the Court would not remand the matter but would apply the complete preemption defense and dismiss the action. Briones v. Bon Secours Health Sys., 69 F. App'x 530, 534 (3d. Cir. 2003)(indicating that, where a cause contains only completely preempted claims, proper procedural course is to decline remand and resolve the issues presented). However, since the CEPA claim originally asserted remains in this case and is not preempted, remand is appropriate. Id. (stating that non-preempted state law claims must be remanded to the state court for a determination of the issues presented).

**B.   Remand**

Plaintiff also avers that the Notice of Removal in this case was untimely because Defendant did not remove within thirty days of the filing of the First Amended Complaint, which added claims for breach of contract, wrongful discharge, and breach of the covenant of good faith and fair dealing.  Notably, Plaintiff's claims in his First Amended Complaint were solely premised upon Verizon's Code of Conduct employee manual.  Defendant, on the other hand, contends that its Notice of Removal was timely because a basis for removal did not exist until the filing of Plaintiff's Second Amended Complaint, in which Costa for the first time made reference to the collective bargaining agreement, thereby triggering the presence of a federal question upon which jurisdiction could be premised.

The procedure for removal is governed by 28 U.S.C. § 1446, which provides in relevant part as follows:

> A defendant [] desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).  Removal of an action initially filed in state court is only proper if the action "originally could have been filed in federal court."  Caterpillar, Inc. v. Williams, 482

17

U.S. 386, 392 (1987).  Absent diversity of citizenship, the presence of a federal question is necessary to support removal. Id.  The presence of a federal question is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction is proper if a federal question is evident from the face of the plaintiff's pleading.  Id.; see also Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908).  The Supreme Court has recognized, however, that the complete preemption doctrine is an "independent corollary" to the well-pleaded complaint rule.  See Caterpillar, 482 U.S. at 393.  In other words, since the preemptive force of certain federal statutes is so great as to convert otherwise ordinary state law claims into federal actions, some matters may be removable on federal preemption grounds even if a federal question does not immediately appear on the face of the well-pleaded complaint.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987); Franchise Tax Bd., 463 U.S. at 22; Caterpillar, 482 U.S. at 392-93.

Normally, a case must be removed within thirty days after the initial complaint is received by the defendant.  28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]").  If, however, the case cannot be removed based on the substance of

18

the initial complaint, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Significantly, in ruling on a motion to remand, the district court must focus on the version of the plaintiff's complaint at the time that the petition for removal was filed.  Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (internal citations omitted).

Federal courts have not hesitated to remand a matter to state court on the basis that removal was untimely when a federal question manifested itself in a plaintiff's initial pleading in the form of federal preemption of a state law claim.  See Flowerette v. Heartland Healthcare Ctr., 903 F.Supp 1042 (N.D. Tex. 1995); Benjamin v. AIG Ins. of Puerto Rico, No.Civ.A.08-74, 2009 WL 903816, at *3 (D.V.I. Mar. 30, 2009); Queen v. Dobson Power Line Constr. Co., 414 F.Supp.2d 676, 680 (E.D. Ky. 2006). In Flowerette, the plaintiff initially filed a complaint based on state law in which she alleged that her former employer unlawfully prevented her from recovering disability benefits. Id. at 1043.  The plaintiff subsequently amended her complaint to include claims based on the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. — an area of

the law subject to the complete preemption doctrine.[8]  Upon the filing of the amended complaint citing ERISA, the defendant removed the case to federal court on the basis of federal question jurisdiction.  Id. at 1044.  The district court, however, held that, even though the plaintiff did not specifically reference ERISA in her initial pleading, her claims in the original complaint nonetheless "related to" an employee benefit plan and were therefore preempted by ERISA at the initial pleading stage.  As such, the court found that the defendant was required to file its notice of removal within thirty days of the date of the initial complaint because this was the point at which the presence of a federal question first became apparent to the defendant.  Id. at 1045.

The logic of Flowerette is directly applicable here.  As discussed at length above, Costa's state contract and tort claims are subject to the complete preemption doctrine as proscribed by § 301 of the LMRA.  In this case, Plaintiff's initial Complaint was solely based on CEPA, and thus did not include a federal question upon which federal jurisdiction could be premised.  On February 7, 2012, however, Costa filed his First Amended

_____

[8]  The plaintiff also amended her complaint to include claims premised upon the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the defendant partially removed on this basis.  As noted by the Flowerette Court, however, the ADA does not completely preempt state law claims.  Id. at 1045 n.4. This Court therefore does not discuss the plaintiff's ADA claim in detail here.

Complaint, which for the first time included claims for breach of contract, wrongful discharge, and breach of the covenant of good faith and fair dealing.  At that point in time, Costa solely based his "new" claims on the Verizon Code of Conduct.  It was not until the filing of Costa's Second Amended Complaint on May 16, 2012 that he actually referred to the collective bargaining agreement and his union in his pleadings.  However, a closer review of the record in this case indicates that, even though Costa did not explicitly reference the collective bargaining agreement in his First Amended Complaint, Verizon knew he belonged to a union and was a party to a collective bargaining agreement at that time.  Notably, after Costa sought leave to file his First Amended Complaint in state court, Verizon filed a Response in Opposition in which it expressly referenced Costa's union, the arbitration proceedings before the union steward prior to the initiation of this lawsuit, and the deposition testimonies of the relevant Labor Relations Manager and EEO Investigator.  In fact, Verizon explicitly acknowledged in its brief that: "[t]he terms and conditions of plaintiff's employment with [Verizon] were governed by the CBA between the International Brotherhood of Electrical Workers, Local 827 and [Verizon]."  (Def.'s Resp. Opp'n, Ex. D, 02/03/12 Br. Opp'n to Pl.'s Mot. Amend. Compl. at 2 n.1.)  Moreover, Verizon attached to its opposition papers: (1) a copy of the arbitrator's opinion and award directly utilizing and

21

discussing the grievance procedure set forth by Costa's collective bargaining agreement; and (2) Plaintiff's testimony during the arbitration proceeding in which he specifically discusses his union.  (Id.)  These filings therefore suggest that Verizon was clearly on notice of Plaintiff's union membership and collective bargaining agreement at the time of Plaintiff's First Amended Complaint.

Section 1446 is clear that, in order for a removal notice to be timely, it must be filed within thirty days of the date on which the defendant first ascertained that the case was removable based on "a copy of an amended pleading, motion, order or other paper."  28 U.S.C. § 1446(b).  Although there is no appellate decision within this Circuit specifically defining "other paper" within the meaning of the statute, the district courts in the Third Circuit have given the term an "embracive construction" to include a wide array of documents, including letter communications between counsel, deposition testimony, stipulations between the parties, answers to interrogatories, and transcripts.  See Marchiori v. Vanguard Car Rental U.S.A., Inc., No.Civ.A.05-5685, 2006 WL 724445, at *2 (E.D. Pa. Mar. 17, 2006); Efford v. Milam, 368 F.Supp.2d 380, 384 (E.D. Pa. 2005) (citing cases in which deposition testimony, transcripts, answers to interrogatories, and correspondence between counsel constituted "other paper"); Entrekin v. Fisher Sci. Inc., 146 F.Supp.2d 594,

613–14 (D.N.J. 2001) (discussing cases in which certain types of oral statements, including deposition and court transcriptions, have been found to be "other paper" within the meaning of § 1446(b)); Rahwar v. Nootz, 863 F.Supp. 191, 192 (D.N.J. 1994) (holding that correspondence between the parties containing statement of damages suffered by plaintiff was "other paper" which could be considered in determining amount in controversy for purposes of removal); Rose v. U.S.A.A. Cas. Ins. Co., No.Civ.A.09-6005, 2010 WL 2557484, at *4 (D.N.J. June 23, 2010) (finding signed stipulation of substitution of party put defendant on notice of presence of diversity jurisdiction); Cabibbo v. Einstein/Noah Bagel Partners, L.P., 181 F.Supp.2d 428, 432-33 (E.D. Pa. 2002) (answers to interrogatories could be "other paper" sufficient to put defendant on notice of removability); Hall v. Delta Airlines, Inc., 340 F.Supp.2d 596, 598 (D.V.I. 2004) (finding letter referencing settlement offer amount constitutes "other paper"); LaCaffinie v. The Standard Fire Ins. Co., No.Civ.A.10-207, 2010 WL 2207986, at *3 (W.D. Pa. May 28, 2010) (finding interrogatories and request for production of documents qualified as "other paper" that led to the determination of federal jurisdiction).  As explained by Judge Kugler, a U.S. District Court Judge in this vicinage, "'[o]ther papers' [] trigger the thirty day removal period under the second paragraph when they are the result of a voluntary act of the

23

plaintiff which effects a change rendering a case subject to removal by defendant which had not been removable before the change." <u>Rose</u>, 2010 WL 2557484 at *4.

It is evident from the caselaw that opposition papers filed with a court that cite to and reference a previous arbitration proceeding, transcribed and sworn testimony, and a collective bargaining agreement between the plaintiff and his union fall within the "embracive" definition of "other paper" prevailing in this Circuit. As such, these "other papers" indicate that Verizon was on notice of Costa's union and collective bargaining agreement at the time of the filing of the First Amended Complaint, and therefore was first made aware of the presence of a federal question — *i.e.*, the preemption of Costa's state law claims by the LMRA — at that time. "Where court documents clearly provide notice to defendants of removability, they should do so, rather than protracting the litigation." <u>See</u> <u>Foster v. Mut. Fire, Marine & Inland Ins. Co.</u>, 986 F.2d 48, 54 (3d Cir.1993). Accordingly, the thirty day removal clock began ticking — at the latest[9] — at the time of the filing of Costa's

---

[9]  Section 1446(b) provides that: "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). If read and applied literally to the instant suit, this would mean that the thirty day time limit actually began to run on the date that Verizon received a copy of the papers

First — not Second — Amended Complaint.  See Carroll v. United

Airlines, Inc., 7 F.Supp.2d 516, 521 (D.N.J. 1998) ("[T]he

thirty-day period begins to run when a defendant can reasonably

and intelligently conclude from the pleadings" the presence of

federal jurisdiction).  Verizon did not, however, file its Notice

of Removal until over four months after the First Amended

Complaint.  See id. (noting that the removing party has a burden

to "act promptly" within the thirty-day window).  As such,

Defendant's Notice of Removal is untimely and this matter should

be remanded to state court.[10]  See id. at 523 (granting motion to

_____

referencing the union and collective bargaining agreement.  The
date on which Verizon received these other papers, however,
remains unknown to the Court.

    [10] Although not an issue raised by either party, the Court
notes that Costa's Third Amended Complaint — which eliminates all
references to his union and the collective bargaining agreement —
is essentially a resurrection of his First Amended Complaint. In
its present Opposition to Plaintiff's Motion to Remand, Verizon
argues that: (1) it did not have a good faith basis for removal
after the First Amended Complaint because it was not on notice of
a federal question until Costa referenced his collective
bargaining agreement in the Second Amended Complaint; and (2)
even with Costa's removal of references to the collective
bargaining agreement in the latest version of his Complaint, this
Court would still have jurisdiction because his state law claims
are preempted by § 301 of the LMRA.  (Def.'s Resp. Opp'n at
6-13.)
    These arguments are inconsistent.  Since Plaintiff's First
Amended Complaint is essentially the same as his current Third
Amended Complaint, it strains credulity to argue that federal
jurisdiction is proper in one instance but not the other.
Indeed, if the LMRA preempts Costa's state law claims in his
Third Amended Complaint, then it likewise preempted the same
claims previously made in Costa's First Amended Complaint.
Verizon cannot pick and choose when it wishes to be subject to
this Court's jurisdiction.  Rather, Verizon's choice to remove

remand on basis that notice of removal was untimely); <u>GMAC Mortg., LLC v. Barel</u>, No.Civ.A.11-3329, 2011 WL 5833988 (D.N.J. Nov. 17, 2011)(same); <u>Johnson v. Forrest</u>, No.Civ.A.07-2755, 2007 WL 2407298 (E.D. Pa. Aug. 17, 2007)(same); <u>Laney v. Indep. Blue Cross</u>, No.Civ.A.06-4175, 2007 WL 2713215 (E.D. Pa. Sept. 14, 2007)(same); <u>Seville v. Stowitzky</u>, No.Civ.A.08-3315, 2009 WL 722274, at *1 (E.D. Pa. Mar. 17, 2009) ("Untimely filing [of removal petition] warrants remand[.]").

### C.   Attorneys' Fees and Costs

Finally, the Court addresses Plaintiff's request for attorneys' fees pursuant to 28 U.S.C. § 1447(c).  Section 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  The Supreme Court has stated that, in removal cases, "the standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees [] only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005).  "An award is within the court's discretion and may be

---

this matter to federal court was limited to the thirty days following the date upon which it first became aware of a basis for federal jurisdiction.

made whether or not the removal was in bad faith." <u>Stephens v.</u> <u>Gentilello</u>, 853 F.Supp.2d 462, 471 (D.N.J. 2012) (Rodriguez, J.)

Even though the Court has determined that Defendant's Notice of Removal was untimely under the circumstances presented in this case, it cannot say that the Verizon "lacked an objectively reasonable basis for seeking removal." <u>See</u> <u>Martin</u>, 546 U.S. at 541. Therefore, Costa's request for fees and costs will be denied.

## IV. CONCLUSION

Based on the above, the Court finds that, despite Costa's removal of the specific references to his collective bargaining agreement in his Third Amended Complaint, his contract and tort claims are nonetheless preempted by the LMRA. However, given that Defendant was on notice that a basis for federal jurisdiction existed at or prior to the filing of Plaintiff's First Amended Complaint, its Notice of Removal was untimely under 28 U.S.C. § 1446. Accordingly, the Court will remand this matter to state court for further adjudication. Finally, Plaintiff's request for attorneys' fees will be denied, and each party shall bear its own costs with respect to this litigation.

An appropriate Order follows.

_/s/ Noel L. Hillman_

At Camden, New Jersey
Dated: <u>03/27/2013</u>

NOEL L. HILLMAN, U.S.D.J.

27